UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-60524-CIV-DIMITROULEAS

ROBERT WHITE, TRUSTEE OF
THE CMM TRUST NO. 1400,

    Plaintiff,

v.

ROBERT PAUL HARDY AND
ROBERT S. HARDY,

    Defendants.

_____/



## FINAL JUDGMENT AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants' May 4, 2005 Joint Motion to Dismiss Complaint [DE-12], Plaintiff's May 12, 2005 Memorandum in Opposition [DE-15], and Defendants' May 24, 2005 Reply [DE-21]. On June 16, 2005, the Court heard oral argument on the instant Motion. After carefully considering the Motion and being otherwise fully advised in the premises, the Court finds as follows:

### I. BACKGROUND

On July 27, 2000, The CMM Trust ("CMM") loaned $2.25 million to Alico Mining, Inc., a corporation owned and controlled by Robert S. Hardy and Robert Paul Hardy ("Hardys"). On July 26, 2002, the Hardys entered into a settlement agreement ("Settlement Agreement") with CMM where the Hardys agreed to pay $2.7 million to CMM. Pursuant to the agreement, the Hardys were required to pay CMM $1 million within twenty-one (21) days and pay the remaining balance in full no later than April 30, 2003. The Hardys were also required to give



CMM both a First Preferred Ship Mortgage and lien on the M/V Newfoundland Explorer ("Ship") and a blank consent judgment against Robert Paul Hardy for the obligation due CMM. The consent judgment was to be held in escrow until either (a) payment in full of all obligations due to CMM; or (b) a default of the obligation due CMM. Robert Paul Hardy made the initial $1 million payment to CMM but defaulted on the remaining $1.7 million.

Accordingly, CMM initiated an admiralty proceeding (Case No. 03-60919-CIV-DIMITROULEAS (S.D. Fla. Dec. 11, 2003)) seeking an *in rem* and *in personam* judgment against the Ship and the Ship owner, the Newfoundland & Cayman Company ("N & C").[1] In a separate civil action in Collier County Circuit Court, however, CMM obtained a consent judgment on May 13, 2003 against Robert Paul Hardy in the amount of $1,874,888.19, plus interest and costs.[2] On December 11, 2003, this Court granted CMM's Motion for Judgment on the Pleadings, issued an Order Directing the Sale of the Ship, and then closed the case. After a Notice of United States Marshal's Sale, the Ship was sold at public auction on January 6, 2004 to CMM who was the only bidder at the auction and paid $5,000. On January 22, 2004, the Clerk entered a Confirmation of Sale. However, on April 26, 2004, the Ship was destroyed by fire and sank in the Ft. Lauderdale harbor. Although the ship was a total loss, the hulk was sold for $275,000, and CMM received net proceeds of $225,000.

Next, CMM brought this action against Robert Paul Hardy and Robert S. Hardy for a Declaratory Judgment and Injunctive Relief pursuant to 28 U.S.C. §§ 2201 and 2202. CMM alleges that this Court has exclusive jurisdiction pursuant to 28 U.S.C. § 1333 (Admiralty), 46

---

[1] N & C owned the Ship and apparently N & C was owned by Quail Aviation, Inc., a Delaware corporation. The stock of Quail Aviation was owned by Naples Road Building Corp., a Florida corporation and the Hardys owned 100% of the stock of Naples Road Building Corp.

[2] See Michael J. Volpe, as Trustee of the CMM Trust No. 1400 v. Robert S. Hardy and Robert Paul Hardy, Case No. 01-1938-CA, Collier County Circuit Court, Fla.

U.S.C. § 31325(b)(1) (Enforcement of Preferred Mortgage Lien in Civil Action), and 28 U.S.C. § 1331 (Federal Question) as the dispute at issue has already been decided by this Court in a prior *in rem* action.[3] CMM argues that the final order in the prior case should apply to any state court action(s), either pending now or in the future, by the doctrines of *res judicata* and/or collateral estoppel.

However, the Hardys allege in the instant Motion to Dismiss, that CMM has failed to assert a legitimate or proper jurisdictional basis to bring this dispute before the Court. The Hardys argue that CMM's Complaint should be dismissed because CMM is attempting to have this Court rule, with no jurisdictional basis, on the validity of a state court judgment.[4]

## II. DISCUSSION

In the instant case CMM alleges this Court has jurisdiction by citing three separate statutes: 46 U.S.C. § 31325(b)(1) (Enforcement of Preferred Mortgage Lien in a Civil Action); 28 U.S.C. § 1331 (Federal Question); and 28 U.S.C. § 1333 (Admiralty). However, the Hardys argue that since there is no diversity of citizenship between the parties and there is no federal question which would require exclusive federal jurisdiction using § 31325, § 1331, or § 1333, CMM has failed to assert a legitimate or proper jurisdictional basis to bring this dispute before the Court.

### A. Standard of Review

A party invoking a federal court's jurisdiction has the burden of proving subject matter jurisdiction. Anderson v. United States, 245 F. Supp. 2d 1217, 1221 (M.D. Fla. 2002), cert. denied, 540 U.S. 965 (2003). In a motion to dismiss under Rule 12(b)(1), the issue is the trial

---

[3] CMM Trust No.1400 v. M/Y "Newfoundland Explorer," Case No. 03-60919-CIV-DIMITROULEAS (S.D. Fla. Dec. 11, 2003).
[4] The Hardys argue that the state court's authority is proper pursuant to 1.540 of the Florida Rules Civil of Procedure.

3

court's jurisdiction. However, there is no presumptive truthfulness that attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Id. at 1221. "The requirement that the nonmoving party present evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists. Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987). Thus, the moving party "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Casumpang v. Int'l Longshoremen's & Warehousemen's Union, 269 F.3d 1042, 1060-61 (9th Cir. 2001), cert. denied, 535 U.S. 1078 (2002) (internal quotation marks omitted).

### 1. Jurisdiction

Generally, federal jurisdiction is proper for actions in tort and contracts when they are accompanied by maritime attachment or garnishment, actions in salvage, maritime lien, and ship mortgage foreclosures. While a federal court's jurisdiction is proper in maritime ship mortgages, it is not exclusive. Sovereign Bank v. Bowditch Boat Holdings, LLC, No. CIV.A.05-10668-NMG, 2005 WL 1405997, at *3 (D. Mass. May 31, 2005). Congress did not intend that all actions involving mortgages on vessels be resolved in federal courts. Id. Federal courts also have original admiralty jurisdiction over disputes arising under contracts and torts which concern the navigation of vessels or water commerce, or the manner in which goods or services are to be provided to ships engaged in water commerce. U.S Const. art. III, § 2. However, the mere fact that a contract has some reference to a maritime matter is not necessarily sufficient to bring it

within admiralty jurisdiction. There must be a direct and substantial link between the contract and operation of the ship, its navigation, or its management afloat. <u>Nehring v. Steamship M/V Point Vail</u>, 901 F.2d 1044, 1048 (11th Cir. 1990). While a contract for the charter of a ship is clearly maritime in nature, a contract creating an agency to obtain a charter has been held nonmaritime. <u>See, e.g.</u>, <u>Cory Bros. & Co. v. United States</u>, 51 F.2d 1010, 1012 (2d Cir. 1931).

With reference to the issue of tort claims, courts traditionally look to the locality of the wrong, which requires that the incident occur on, in or over navigable waters, without any regard to whether the activity bears any maritime nexus or connection with commerce. <u>Victory Carriers, Inc. v. Law</u>, 404 U.S. 202, 205 (1971). In 1972, however, the Supreme Court modified <u>Victory Carriers</u> by adding a second prong to the nexus test which required a significant relationship between the incident and traditional maritime activity. <u>See</u> <u>Executive Jet Aviation, Inc. v. City of Cleveland</u>, 409 U.S. 249, 268 (1972).

In the instant case, CMM has the burden of proving subject matter jurisdiction. <u>See</u> <u>Anderson</u>, 245 F. Supp. 2d at 1221. Additionally, given that there is no presumptive truthfulness that attaches to CMM's allegations in their Complaint, and since there are disputed material facts, the Court will evaluate for itself the merits of the jurisdictional arguments.

<u>46 U.S.C. § 31325(b)(1)</u>

*In rem* and *in personam* actions in admiralty have distinct differences, one being against the vessel, and the other against the mortgagor, maker, co-maker, or guarantor of the loan. 46 U.S.C. § 31325 provides that upon default under a ship mortgage, the mortgagee may bring a federal *in rem* admiralty action against the vessel, and then bring a subsequent federal action *in personam* in admiralty against the guarantor to recover any deficiency remaining after sale of the vessel. <u>Id.</u> The amount of any deficiency is calculated by subtracting the net proceeds of the

sale of the vessel from the outstanding debt. Generally, net proceeds from the sale are an automatic determination of the amount to be applied upon the debt and the mortgagee, however, the judicial sale price is not always conclusive. Bollinger & Boyd Barge Serv., Inc. v. M/V Captain Claude Bass, 576 F.2d 595, 597 (5th Cir. 1978). "A court of admiralty is, as to all matters falling within its jurisdiction, a court of equity. Its hands are not tied up by the rigid and technical rules of the common law, but it administers justice upon the large and liberal principles of courts which exercise a general equity jurisdiction." Id. at 587 (citation omitted); C.f. In re Six, 80 F.3d 452 (11th Cir. 1996) (holding that a creditor cannot invoke *res judicata* to bar the debtor-guarantor from showing that the value of the property was more than the bid price). Under the federal rule, a fair value offset may be allowed under proper circumstances where the equity of the circumstances requires it. Bollinger & Boyd Barge Serv., Inc., 576 F.2d at 597-98 (reversing the trial court's holding which found that the fair market value of the vessel was a shockingly low $100.00 bid by the plaintiff and would have given the plaintiff the vessel plus the deficiency amount of $93,900). In Walter E. Heller & Co. v. O/S Sonny V, 595 F.2d 968 (5th Cir. 1979), the plaintiff purchased the "Sonny V" for $35,000 at the foreclosure sale and then re-sold the vessel for $52,000 after making repairs, almost a 50% profit. However, less than a year prior to the foreclosure sale, the vessel had an appraised value of $118,000. The appeals court held that the district court had abused its discretion in not permitting the defendants to pursue an offset measured by the fair value of the vessel as opposed to the foreclosure sale price and remanded the issue for further findings of fact. Id. at 972. This is the same issue in the instant case. CMM in their Complaint argues that the prior *in rem* action should prevent the Hardys from relitigating the issue in any court through the application of *res judicata* and/or collateral estoppel.

However, the Hardys were never made a party to the prior *in rem* action and the issue of sale price or fair market value has not been litigated. In the prior civil action *in rem* against the Ship, CMM relied on § 31325(b)(1) to enforce their preferred mortgage lien. Although the Hardys' names appeared in the style of the case, the Hardys were never served *in personam* or were in any other way a party to the suit. In fact, the record before the Court demonstrates that CMM did not consider the Hardys as owners with standing to challenge the prior *in rem* action against the Ship. Nevertheless, CMM did not attempt to use § 31325(b)(2) to bring a subsequent federal action *in personam* against N & C or the Hardys to recover the substantial deficiency which remained after the sale of the Ship.

This Court granted CMM's Motion for Judgment on the Pleadings on December 11, 2003 [DE-17-1], entered a Final Judgment [DE-24], ordered the Ship sold [DE-25], and the case was closed.[5] It is important to note that prior to the sale of the Ship, CMM chose to pursue the debt owed to them by the Hardys in a separate state court action where CMM filed the consent judgment against Robert Paul Hardy. Next, the Ship was sold at public auction to CMM for five thousand dollars ($5,000), and by CMM's Request [DE-27], the Clerk of the Court confirmed the sale of the ship [DE-30]. Although not a proper defendant in the prior *in rem* action, Robert S. Hardy filed a Suggestion of Bankruptcy with this Court on February 2, 2004 [DE-33].[6] The record reflects that the bankruptcy judge heard arguments from both CMM and the Hardys on the issue of the amount of the state court consent judgment still owed to CMM and any unliquidated set-off which the Hardys might be entitled to from the fair market value of the

---

[5] CMM's Motion for Judgment on the Pleadings in the prior *in rem* was granted after N & C failed to respond to this Court's Order to Show Cause in that case why CMM's Motion should not be granted [DE-21].

[6] Case No. 04-00943-9P1, Chapter 11 Bankr., filed on January 16, 2004.

7

Ship.[7] The issue was not resolved, but the judge noted that whatever amount (if any) was in fact owed CMM by Robert S. Hardy could be determined in state court. (Defendants' Statement of Facts at ¶¶ 38-39).

The Hardys were never a party to the prior *in rem* action because CMM chose to pursue the debt owed to them by filing the consent judgment in state court, which had concurrent jurisdiction, rather than *in personam* with this Court. See Sebastian Tow Boat & Salvage, Inc. v. Slavens, No. 02-CV-759-ORL31JGG, 2002 WL 32063121, at *8-9 (M.D. Fla. Oct. 15, 2002) (holding that in admiralty actions brought *in personam* and subject to concurrent jurisdiction, the forum selected by the plaintiff controls). CMM's states in their Complaint that:

> The Complaint for Declaratory Judgment and Injunctive Relief filed by the Trust is exclusively based upon the earlier *in rem* foreclosure suit against the Ship and the efforts of the Defendant to undo the Judgment on the Pleadings and Order Authorizing Public Sale entered by this Court in the earlier proceeding.

Complaint at p. 3, ¶ 1.

The theoretical outcome of such an argument, should this Court agree, would be to prevent the Hardys from arguing that the fair market value should be used to determine the value of the Ship as opposed to the actual price paid for it at the public auction. If the Hardys were precluded from arguing this issue, the Ship's value would be pegged at $5,000, the price CMM paid for it. This Court does not agree with CMM that § 31325 has this type of preclusionary effect upon the Hardys. More importantly, the issue of whether the sale price of the Ship, or its fair market value, should be used in calculating the set-off the Hardys are entitled to was never presented to this Court almost certainly because the Hardys were never a party to the prior suit. See, e.g., Envtl. Def. Fund, Inc. v. Alexander, 467 F. Supp. 885 (N.D. Miss. 1979), cert. denied, 449 U.S.

---

[7] Two Motions were filed by Debtor Robert S. Hardy and Robert Paul Hardy to regarding the fair market value set-off issue. Defendant's Statement of Facts at ¶ 33 (a).

919 (1980). Additionally, to prohibit the Hardys the opportunity to argue that the fair market value of the Ship should be used rather than its sale price, in light of the great disparity of the two amounts, would certainly be inequitable as the cases outlined above demonstrate.[8] Furthermore, since neither party has stated any reason that the issue can not be properly resolved in the state court consent judgment action, this Court is reluctant to interfere. Therefore, due to reasons stated above, this Court finds that § 31325 as applied to the instant action is an improper basis for jurisdiction in this Court.

## 28 U.S.C. § 1331

28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Id. Although § 1331 grants original jurisdiction to the federal courts in civil actions wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States, they do not extend to matters in admiralty arising under the general maritime law. See, e.g., Parsell v. Shell Oil Co., 421 F. Supp 1275, 1277 (D. Conn. 1976) (jurisdiction under § 1331 does not confer jurisdiction over § 1333). As a result, in order to for jurisdiction to be proper using § 1331, CMM must have alleged an issue other than admiralty in their Complaint, which they have not. This fact is supported by CMM's Memorandum of Law [DE-10] in which they state:

> The Complaint for Declaratory Judgment and Injunctive Relief filed by the Trust is exclusively based upon the earlier *in rem* foreclosure suit against the Ship and the efforts of the Defendant to undo the Judgment on the Pleadings and Order Authorizing Public Sale entered by this Court in the earlier proceeding.

Complaint at p. 3, ¶ 1.

---

[8] This Court has not made any determination of the fair market value of the Ship, but points out that the mere fact that the hulk of the Ship was sold for $275,000, after the fire, illustrates the great disparity between its sale price of $5,000 and its alleged actual fair market value before the fire.

9

Therefore, the Court finds CMM's general claim that jurisdiction can be proper using § 1331 is erroneous in that § 1331 does not confer jurisdiction over § 1333. More specifically since CMM's claim is exclusively based upon the earlier *in rem*, § 1331's application would also be erroneous.

### 28 U.S.C. § 1333

In the instant case, the Court agrees with CMM that this Court had proper original jurisdiction in the preceding *in rem* action. But CMM's attempt to bootstrap jurisdiction in the instant case by pleading that the issue to be resolved in the state court consent judgment action is based on the earlier *in rem* foreclosure simply because both actions are the product of the same Settlement Agreement falls short of the established benchmark of admiralty jurisdiction by the courts.

The Settlement Agreement was a contract between CMM and the Hardys. One of the terms of the Settlement Agreement was that the Hardys would give CMM a Preferred Ship Mortgage on the Ship which would act as collateral for the amount due CMM by the Hardys. Another term of the Settlement Agreement was that Robert Paul Hardy would give CMM a Consent Judgment for the amount due CMM by the Hardys. When the Hardys defaulted on the $1.7 million outstanding balance, CMM first filed the Consent Judgment in state court, and then filed the *in rem* action against the Ship with this Court. It was CMM's choice to split the two actions between this Court and the Collier County Circuit Court. Had CMM wanted to pursue N & C and/or the Hardys in federal court, they could have used § 31325(b)(2) which would have allowed them to bring a subsequent federal action *in personam*. But since CMM chose not to pursue that cause of action, the Court finds that the two separate actions are distinctly different methods that CMM used to try to recover the $1.7 million they were allegedly due.

Additionally, the Court believes that there is not a substantial link between the two actions and the operation of the Ship, its navigation, or its management for § 1333 jurisdiction to apply. While the prior *in rem* against the Ship was clearly a basis for admiralty jurisdiction, a consent judgment filed in state court is nonmaritime, even though it resulted from the same Settlement Agreement as the *in rem* action. Accordingly, this Court declines to interfere with the state court's judgment. Furthermore, the facts in the instant case guide this Court to decide that CMM has failed to assert a legitimate or proper jurisdictional basis to bring this dispute before this Court.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss [DE-12] is **GRANTED**.

2. All other pending motions are **DENIED AS MOOT**.

3. The Clerk shall close this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 15 day of July, 2005.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies Furnished to:

James Helf, Esq.
Vincent Lynch, Esq.
Edmond Koester, Esq.
Casey Weidenmiller, Esq.
James Boatman, Esq.